**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | NO. 5:25-CR-00089-CHB-MAS |
| ) | |
| **JENNIFER A. GRIBBEN,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**REPORT AND RECOMMENDATION**

Defendant Jennifer A. Gribben moves the Court to suppress all evidence of an alleged assault she committed on a federal officer during an investigatory stop of a vehicle in which she was a passenger. Gribben claims the stop was the result of unconstitutional racial profiling and, consequently, all evidence resulting from the stop must be suppressed. Viewing the totality of the circumstances, the Court disagrees with Gribben and finds there was reasonable suspicion to stop the vehicle. Thus, the Court recommends the Motion to Suppress be denied.

**I.    RELEVANT FACTUAL BACKGROUND**

The Indictment in this case arises from the stop of a vehicle in which Gribben was a passenger on February 17, 2025. Ultimately, a fracas ensued and Gribben was indicted for an alleged assault on two federal officers at the scene. Gribben challenged the legal validity of the initial stop.

At the hearing on the Motion to Suppress, the United States presented the testimony of Homeland Security Investigator Joseph "Ken" Borders to describe the events leading up to the stop. Borders testified Homeland Security was investigating an individual named Hector Manuel Morales Lopez ("Morales") who was last known by law enforcement to reside at an apartment complex on Winburn Drive in Lexington, Kentucky. Morales was listed as 5 feet 1 inch tall and weighing about 135 pounds. He had been charged with the rape of a child, among other crimes, in Kentucky state court. Morales was Hispanic, from Guatemala, and 28 years old. Morales did not have legal status to be present in the United States.

On February 17, 2024, several Homeland Security agents and task force officers were conducting surveillance on the apartment complex on Winburn Drive that they believed was Morales's last known address. One task force officer had visual contact with the apartment complex while the remaining officers waited nearby. That task force officer advised the other officers that a Hispanic male matching the height and weight of Morales had exited the specific apartment building in the complex matching Morales's last known residence. Though unknown to the officers at the time, that Hispanic male was not Morales but Martin Lopez Rivera ("Lopez"). Lopez then entered a Ford Escape with the defendant, Jennifer Gribben. The vehicle departed the apartment complex with Lopez driving.

One of the officers pulled up next to the passenger side of the Ford Escape and attempted to confirm Morales's identity through the window of the vehicle. However, the officer relayed he could not definitively say whether or not the driver was Morales

due to a tint on the window. Borders followed the vehicle, activated his emergency lights, and pulled the vehicle over. Borders informed Lopez that he was a federal law enforcement officer looking for Morales. Lopez informed Borders he was not Morales. Borders requested Lopez produce identification to prove he was not Morales. Lopez produced an insurance card and registration for the vehicle in his name but acknowledged he did not have a driver's license. Eventually Lopez held a Mexican consular card up to the window. Borders used the information from the consular card to run Lopez's identifying information through law enforcement databases to confirm his identity. Borders confirmed that Lopez was not Morales, but he also confirmed that Lopez did not have legal authorization to be present in the United States. Lopez was ultimately arrested for the immigration offense, and Gribbens was charged with assaulting two officers in the ensuing melee.

Borders testified Lopez did not commit a traffic violation, and that the sole reason for the stop was to investigate whether or not he was Morales.

Gribbens urges the Court to suppress all evidence of the stop and everything that followed, arguing that officers did not have sufficient legal justification to stop Lopez's vehicle in violation of the Fourth Amendment. Alternatively, Gribbens argues that the stop was impermissibly extended beyond simply confirming that Lopez was not Morales.

## II.   ANALYSIS

### A.   LEGAL FRAMEWORK FOR *TERRY* STOPS

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure

of persons under the Fourth Amendment." *Whren v. United States*, 517 U.S. 806, 809-10 (1986). "Not only the driver of a stopped vehicle, but a passenger as well, is seized within the meaning of the Fourth Amendment and thus may challenge the legality of the stop." *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008). The legal framework for investigatory stops under the Fourth Amendment is well established. "[A] warrantless encounter may be countenanced under the Fourth Amendment if an officer has reasonable suspicion that criminal activity may be afoot. In such circumstances, the officer may conduct a brief traffic stop for investigative purposes and make reasonable inquiries to confirm or dispel his suspicions." *Id.* at 370 (*citing United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000). Reasonable suspicion is "more than a mere hunch[,]" it requires "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (citations and quotation marks omitted); *Terry v. Ohio*, 392 U.S. 1, 22 (1968). "[T]he stop must be justified at its inception, and it must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008). Exceeding the reasonable scope of the stop is also a violation of the Fourth Amendment. *Id.*

**B.     REASONABLE SUSPICION FOR THE STOP**

Prior to the investigatory stop, law enforcement had the following facts: (1) an illegal alien named Hector Manuel Morales Lopez had been charged with felony offenses in state court, including rape; (2) Morales was a 28 year old Hispanic male weighing approximately 135 pounds and standing 5 feet 1 inch tall; and (3) Morales's

Page **4** of **8**

last known address, including the specific apartment number, on Winburn Drive. Lopez was a Hispanic male, 5 feet 2 inches tall with a medium build, leaving from the same apartment building's breezeway area as the apartment Morales was last known to inhabit.

These are "specific and articulable facts" sufficient to justify an investigatory stop to determine if Lopez was Morales. Lopez argued that the stop was unreasonable because officers should have been able to determine that he was not Morales without stopping him. Lopez was 40 years old at the time of the stop and argues he could not possibly be confused for a 28-year-old. Borders testified law enforcement had the above description of Morales but did not have a photograph of Morales until after the stop. Borders also testified that the two times the officers saw Morales prior to the stop were from a distance or through a tinted window in a moving car. Neither of these sightings were sufficient for law enforcement to conclude that Lopez was not Morales. Contrary to Lopez's argument that Lopez was stopped solely on the basis of his race, Borders testified that was one of several factors that matched Morales's description, including also his height and weight and the location. Based on the description of Morales and generally matching description and location of Lopez, it was reasonable for law enforcement to stop Lopez's vehicle to determine Lopez's identity.

C.   **EXTENSION OF THE STOP**

Lopez next argues that even if the initial stop was permissible, once law enforcement stopped the vehicle, they unreasonably extended the stop. The Court disagrees. "Beyond determining whether to issue a traffic ticket, an officer's mission

includes 'ordinary inquiries incident to the traffic stop.' Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance." *Rodriguez v. United States*, 135 S.Ct. 1609, 1615, (2015) (quoting *Illinois v. Caballes*, 125 S.Ct. 834, 837, (2005).

Borders approached Lopez's vehicle and requested identification. Lopez produced the vehicle's registration and insurance and said he did not have a driver's license. Even though not having a driver's license is a violation, there was no evidence Borders pursued investigating that violation. Instead, Borders again asked for identification, and Lopez ultimately produced a Mexican consular card by holding it up against the tinted window. Borders testified that although the name and birth date on the consular card did not match Morales's information, it was necessary for Borders to independently verify Lopez's identity to confirm he was not Morales. Borders took the identifying information and put it into law enforcement databases in the computer in his cruiser.

Upon doing that, Borders learned Lopez was not Morales, *and* learned Lopez did not have legal status to be present in the United States. Only then was the stop briefly extended for the new purpose of conclusively determining whether Lopez was illegally present in the United States. Borders did so by asking another special agent to independently verify Lopez's identification and alien status prior to making the arrest, which Borders testified took "a minute or two." Seizures can be lawfully extended beyond the time necessary to address the mission of the stop if "something

happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot." *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (quoting *United States v. Davis*, 430 F.3d 345, 353 (6th Cir. 2005)). In Lopez's case, Border's verification of Lopez's identity uncovered Lopez's immigration status, leading to an extension of the stop for "a minute or two" prior to making the arrest. This *de minimis* extension of the stop after Borders discovered incidentally that Lopez was likely committing a criminal violation, to ensure Lopez was properly arrested, is not a violation of the Fourth Amendment.

### III.    CONCLUSION

Based on the record, the Court finds that the Homeland Security special agents lawfully stopped Lopez's vehicle to determine Lopez's identity because there were specific and articulable facts giving rise to reasonable suspicion that Lopez's true identity might be their target, Hector Manuel Morales Lopez. The Court further finds that law enforcement lawfully extended the stop for only a few minutes to allow the second special agent to double-check Border's accuracy in determining Lopez's immigration status prior to making an arrest.

Accordingly, the Court finds that the stop did not violate the Fourth Amendment. The Court, therefore, **RECOMMENDS** that the District Court **DENY** Gribben's Motion to Suppress [DE 15].

*Right to Object*

The Court issues this Recommended Disposition under Federal Rule of Criminal Procedure 59(b) and 28 U.S.C. § 636(b)(1)(B). Within fourteen days (14) after being served with a copy of this decision, any party may serve and file specific

written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to make timely objections consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466, 468 (1985).

Signed this the 23rd of February, 2026.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY