UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5:25-CR-00089-CHB |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| JENNIFER A. GRIBBEN, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

This matter is before the Court on the Report and Recommendation ("Recommendation") issued by United States Magistrate Judge Matthew A. Stinnett, [R. 32], which addresses Defendant Jennifer A. Gribben's Motion to Suppress and to Dismiss Charges, [R. 15]. The United States responded to the motion. [R. 19]. Gribben did not file a reply. On February 23, 2026, the Magistrate Judge issued his Recommendation, recommending that the motion be denied. [R. 32]. On March 9, 2026, Gribben filed Objections to Magistrate Judge's Report and Recommendation on Motion to Suppress. [R. 33]. For the reasons that follow, the Court will adopt the Recommendation as the opinion of this Court, overrule Gribben's objections, and deny Gribben's motion.

## I.    BACKGROUND

On February 17, 2025, Gribben and her husband, Martin Lopez Rivera ("Lopez"), were traveling in a vehicle in Lexington, Kentucky. Federal agents stopped the vehicle, driven by Lopez, on suspicion that Lopez was an individual named Hector Manuel Morales Lopez ("Morales"). Federal and state law enforcement were actively searching for Morales on charges of rape, sexual

- 1 -

abuse, and unlawful imprisonment, and he was known to be unlawfully present in the United States. Morales was listed as being approximately five feet one inch tall, approximately 135 pounds, Hispanic, and twenty-eight years old. Lopez was five feet two inches tall, was of medium weight, Hispanic, and forty years old. On February 17, 2025, law enforcement officers were surveilling Morales's last known address. During that operation, one of the surveilling officers spotted Lopez leaving from the same apartment building's breezeway as Morales's last known address. Lopez then entered a vehicle with Gribben, and the two drove away.

After receiving the information that there was an individual who matched Morales's general description and who just departed the surveilled address, United States Department of Homeland Security Investigator Joseph Borders began following Lopez's vehicle. Upon stopping the vehicle, Borders attempted to confirm whether Lopez was Morales. Lopez explained that he was not Morales and provided Borders with his vehicle registration, insurance, and a Mexico consular card showing his name. Using this information, Borders returned to his patrol vehicle to verify its authenticity in order to determine whether Lopez was indeed Morales, their targeted individual. Upon searching his name in the database, Borders confirmed that Lopez was not Morales but contemporaneously discovered that Lopez did not have legal authorization to be present in the United States. The stop was briefly extended by "a minute or two" so that Borders could independently verify Lopez's identification and alien status with another special agent. Upon receiving this confirmation, Lopez was subsequently arrested for this immigration offense, during which Gribben allegedly assaulted two federal officers at the scene. *See* Motion Hearing Audio Recording (recorded February 9, 2026) (on file with United States District Court for the Eastern District of Kentucky). Gribben was subsequently charged with two counts of assaulting a federal officer in violation of 18 U.S.C. § 111. [R. 1].

## II.    LEGAL STANDARD

Under 28 U.S.C. § 636(b)(1)(A), a district court judge may designate a Magistrate Judge to submit proposed findings of fact and recommendations for the disposition of certain motions, including motions to suppress evidence. Within fourteen days of being served a copy of that recommended disposition, any party may file written objections to the Magistrate Judge's proposed findings and recommendation. § 636(b)(1)(C). This Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see also Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). A specific objection, which preserves the issue for appeal, "explains and cites specific portions of the report which counsel deems problematic." *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 1997) (citation modified) (internal quotation marks omitted) (quoting *Smith v. Chater*, 121 F.3d 709 (Table), 1997 WL 415309, at *2 (6th Cir. 1997)).

"[A]n objection to an R&R is not meant to be simply a vehicle to rehash arguments set forth in the petition, and the Court is under no obligation to review de novo objections that are merely an attempt to have the district court reexamine the same arguments set forth in the petition and briefs." *Dundee v. Univ. Hosps. Corp*, No. 1:19-CV-01141, 2020 WL 511520, at *1 (N.D. Ohio Jan. 31, 2020) (citing *Howard v. Sec. of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)); *see also Roberts v. Warden, Toledo Corr. Inst.*, No. 1:08-CV-00113, 2010 WL 2794246, at *7 (S.D. Ohio July 14, 2010) ("The Court is under no obligation to review de novo objections that are merely perfunctory or an attempt to have the Court reexamine the same arguments set forth in the original petition."); *McClain v. Hanna*, No. 2:19-CV-10700, 2019 WL 7288768, at *2 (E.D. Mich. Dec. 30, 2019) ("[O]bjections to a report and recommendation should not be used as a

vehicle to rehash arguments previously made by the objecting party."). In prohibiting "general objections" to magistrates' reports, the Sixth Circuit stated that

> [a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.

*Howard*, 932 F.2d at 509; *see also Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) ("The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995))); *see also Slater v. Potter*, 28 F. App'x 512, 513 (6th Cir. 2002) (same). Ultimately, a district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1)(C).

### III.    ANALYSIS

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. Federal Rule of Criminal Procedure 12(b)(3)(C) permits defendants to file pretrial motions to suppress evidence, which are "appropriate when evidence sought to be introduced in a criminal case is alleged to have been unlawfully obtained." *United States v. Salazar*, No. 1:14-CR-00029-GNS-1, 2016 WL 2903282, at *1 n.1 (W.D. Ky. May 18, 2016) (internal quotation marks and citations omitted); *see also United States v. Nailor*, 683 F. Supp. 3d 678, 682 (E.D. Mich. 2023) (citing Fed. R. Crim. P. 12(b)(3)). "The proponent of a

motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978)). Should a court find that evidence was unlawfully obtained, "that evidence collected in violation of the Fourth Amendment may be excluded from the criminal trial of the victim of the unlawful search." *United States v. Novak*, 814 F. App'x 1009, 1012 (6th Cir. 2020) (citing *Mapp v. Ohio*, 367 U.S. 643, 648 (1961)). This is known as "the exclusionary rule." *See id.*

The Fourth Amendment's protections "extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008) (internal citation and quotation marks omitted). "Not only the driver of a stopped vehicle, but a passenger as well, is seized within the meaning of the Fourth Amendment and thus may challenge the legality of the stop." *United States v. Campbell*, 549 F.3d 364, 371 (6th Cir. 2008) (citing *Brendlin v. California*, 551 U.S. 249 (2007)). However, pursuant to the Supreme Court's ruling in *Terry v. Ohio*, 392 U.S. 1 (1968), "a warrantless encounter may be countenanced under the Fourth Amendment if an officer has reasonable suspicion that criminal activity may be afoot." *Campbell*, 549 F.3d at 370. "In such circumstances, the officer may conduct a brief traffic stop for investigative purposes and make reasonable inquiries to confirm or dispel his suspicions." *Id.* (citing *United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000)). Importantly, reasonable suspicion

> requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard. If an officer possesses a particularized and objective basis for suspecting the particular person of criminal activity based on specific and articulable facts, he may conduct a *Terry* stop.

*Dorsey v. Barber*, 517 F.3d 389, 395 (6th Cir. 2008) (citation omitted). "Additionally, the stop must be justified at its inception, and it must be reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Blair*, 524 F.3d 740, 750 (6th Cir. 2008) (citing *Terry*, 392 U.S. at 19–20).

The Supreme Court has held that "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). The Supreme Court explained that "ordinary inquiries incident to [the traffic] stop" such as "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance," as well as certain officer safety related tasks, are related to the purpose of the stop and do not constitute unreasonable extensions. *Id.* at 355–56 (quoting in part *Illinois v. Caballes*, 543 U.S. 405, 408 (alternation in original)). "On-scene investigation into other crimes" is not related to the original mission of a traffic stop. *Id.* at 356. Thus, while an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop[,] . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 355. However, "the police may extend a stop beyond the scope of what was originally permissible if 'something happened *during the stop* to cause the officer to have a reasonable and articulable suspicion that criminal activity is afoot.'" *United States v. Stepp*, 680 F.3d 651, 661 (6th Cir. 2012) (alteration in original) (quoting *United States v. Davis*, 430 F.3d 345, 354 (6th Cir. 2005)).

In the Report and Recommendation, Judge Stinnett concluded that there was sufficient reasonable suspicion to stop Lopez to confirm his identity and that the additional "one to two minutes" that it took Borders to confirm Lopez's alien status was not an unreasonable extension

of the lawful stop. [R. 32, pp. 4–7]. Judge Stinnett accordingly recommends that Gribben's motion should be denied. *Id.* at 7. Gribben makes three objections:

1. Defendant objects to the finding that the initial stop at issue was lawful under *Terry v. Ohio*, 392 U.S. 1 (1968). Defendant maintains her position that the stop was pretextual and only occurred because the driver of the vehicle was Hispanic. While law enforcement is allowed to conduct traffic stopes under *Whren v. United States*, 517 U.S. 806 (1986) and *United States v. Campbell*, 549 F.3d. 364 (6th Cir. 2008), the officer testified at the hearing that the vehicle did not violate any traffic laws whatsoever. The only reason the vehicle was stopped was because the driver was a Hispanic male. That is a violation of the Defendant's 4th Amendment rights.
2. Defendant objects to the finding that the officers who stopped the vehicle Defendant was found in had reasonable articulable suspicion to conduct the stop. The testimony at the hearing indicated that there was a significant age difference between the driver who was stopped and the individual law enforcement claimed to be looking for.
3. Defendant objects to the finding that the officers did not unreasonably extend the stop by investigating the driver's immigration status. Defendant argues that there was no reason to investigate the driver's immigration status and extend the stop and that doing so was a violation of the passenger's 4th amendment rights.

[R. 33, pp. 1–2].

Gribben uses as grounds for these objections the same arguments she made in her motion and the subsequent hearing before Judge Stinnett. *Compare* [R. 33, pp. 1–2 (objections)], *with* [R. 15 (motion to suppress)], *and* Motion Hearing Audio Recording, at 51:15 (arguing same basis as Objection #1), 52:20 (arguing same basis as Objection #2), 57:00 (arguing same basis as Objection #3)[1] (recorded February 9, 2026) (on file with United States District Court for the Eastern District of Kentucky). Judge Stinnett considered and rejected each of these arguments. *See* [R. 32, pp. 4–5 (considering the arguments in Objection #1)]; *id.* at 5 (considering the arguments

---

[1] The Court notes that Gribben's argument that the stop was unconstitutionally extended was not made in her underlying motion. *See* [R. 15]. However, during the hearing before Judge Stinnett, defense counsel did seem to suggest that the stop was improperly extended after Borders confirmed that Lopez was not Morales by searching his information in the database. *See* Motion Hearing Audio Recording, at 57:00 (recorded February 9, 2026) (on file with United States District Court for the Eastern District of Kentucky).

in Objection #2); *id.* at 5–7 (considering the arguments in Objection #3). The conclusory objections do not attempt to explain how Judge Stinnett erred in his understanding or application of the facts or the law. Instead, Gribben broadly objects to the Recommendation's conclusions based on the same arguments that Judge Stinnett considered and addressed in reaching those conclusions. The Court need not review these rehashed arguments that Judge Stinnett has already thoughtfully and accurately addressed. *See Dundee*, 2020 WL 511520, at *1 (citing *Howard*, 932 F.2d at 509); *Roberts*, 2010 WL 2794246, at *7; *McClain*, 2019 WL 7288768, at *2. Objections such as these that seek to take a "second bite at the apple" "undermine the purpose of the Federal Magistrate's Act, 28 U.S.C. § 636, which serves to reduce duplicative work and conserve judicial resources." *Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470, at *3 (W.D. Mich. Mar. 28, 2013).

Based upon a review of the record, the Court nonetheless agrees with Judge Stinnett's analysis, findings, and conclusions under any applicable standard. Worth highlighting, and contrary to Gribben's claim, Lopez was not pulled over simply because he was Hispanic. Instead, he was pulled over because he was the same relative height, weight, and ethnicity as Morales, and importantly, he was seen leaving the same apartment complex and building that law enforcement knew as Morales's last known residence. These are "specific and articulable facts" supporting reasonable suspicion that Lopez was Morales. *See Dorsey*, 517 F.3d at 395. While Lopez was twelve years older than Morales, as Judge Stinnett notes, [R. 32, p. 5], Borders did not have a photograph of Morales to compare against and his previous spotting of Morales "from a distance or through a tinted window in a moving car" were insufficient for him to confirm that Lopez was not Morales. Based on the totality of the circumstance, there was reasonable suspicion supporting Borders's stop of Lopez. *See United States v. Anderson*, 923 F.2d 450, 455 (6th Cir. 1991)

(affirming a district court's finding that a stop was not only because of the defendant's race, but was based on other relevant factors supporting a finding of reasonable suspicion under the totality of the circumstances); *United States v. Bailey*, 743 F.3d 322, 335 (2d Cir. 2014) (finding reasonable suspicion largely because the defendant's "race, sex, build, and hair were consistent with an informant's description").

Further, the Court also agrees with Judge Stinnett's conclusion about the lawfulness of the extension of the stop. Once Borders ran Lopez's information in the database, he had probable cause that Lopez did not have legal authorization to be present in the United States. Only then did Borders extend the stop by "a minute or two" simply to confirm Lopez's identity and alien status with another agent. This *de minimis* extension was based no only on probable cause of a different crime, but also was not unreasonable under the circumstances. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 651 (6th Cir. 2003) ("Rodriguez–Suazo admitted that he was an illegal Mexican immigrant. Once the police had this confession, the police had probable cause to detain and arrest Rodriguez–Suazo, albeit for a different crime than originally expected under the search warrant."); *United States v. Medina-Gasca*, 739 F.2d 1451, 1454 (9th Cir. 1984) ("[T]he officers discovered that the occupants of the vans were illegal aliens. From these facts and reasonable inferences flowing therefrom, the district judge was thoroughly justified in arriving at the conclusion that probable cause for the arrest was established."); *United States v. Guijon-Ortiz*, 660 F.3d 757, 768–70 (4th Cir. 2011) (finding that the officer did not unconstitutionally extend the stop when he called ICE to inquire into the validity of a provided ID after a database search showed no outstanding warrants); *United States v. Soriano-Jarquin*, 492 F.3d 495, 501 (4th Cir. 2007) (finding no constitutional violation and noting that while the officer "did contact the ICE, which asked him to hold the vehicle for an administrative immigration inquiry, that contact came only after the driver

- 9 -

of the van indicated that the passengers were illegal aliens. Because the request did not extend the stop, it did not alter its lawful character").

Consequently, Gribben's objections are overruled. Gribben has not met her burden of showing that her constitutional rights have been violated, and her motion to suppress must be denied.

## IV.   CONCLUSION

For the foregoing reasons, the Court adopts the Magistrate Judge's Report and Recommendation and overrules Gribben's objections. Accordingly, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. Magistrate Judge Stinnett's Report and Recommendation, [**R. 32**], is **ADOPTED** as the Opinion of the Court.

2. Gribben's Objections, [**R. 33**], to the Report and Recommendation are **OVERRULED**.

3. Gribben's Motion to Suppress and to Dismiss Charges, [**R. 15**], is **DENIED**.

This the 13th day of April, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY